UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE CAMARGO ALEJO, #A089-861-944,<br><br>Plaintiff,<br><br>vs.<br><br>L. MILETO; A. HETTER; C. LaROSE; J. SOTO,<br><br>Defendants. | Case No.: 3:26-cv-00251-JES-LR<br><br>**ORDER: (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS (2) DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND (3) DISMISSING CIVIL ACTION FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)(ii), (iii)**<br><br>[ECF Nos. 2, 3] |

Plaintiff Jose Camargo Alejo, currently in Immigration and Customs Enforcement ("ICE") custody at Otay Mesa Detention Center ("OMDC") in San Diego, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 alleging Fifth and Eighth Amendment violations on the part of OMDC officials related to their treatment of her keratoconus, a progressive eye condition affecting the cornea. *See* ECF No. 1 at 2–6.[1] Plaintiff moves to

---

[1] The Court takes judicial notice of two other § 1983 civil rights actions filed by Plaintiff earlier in 2025, both of which also remain pending. *See Camargo Alejo v. Vista Detention Facility*, S.D. Cal. Case No. 3:25-cv-00258-AGS-BJW (hereafter "*Camargo Alejo I*")

1

proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 2), and further seeks a temporary restraining order ("TRO") and/or preliminary injunction requiring Defendants to refer her to an ophthalmologist for corneal cross-linking surgery and an eventual cornea transplant. (ECF No. 3 at 1–2.)

Having carefully reviewed Plaintiff's complaint, all attached exhibits, her IFP motion and TRO, the Court **GRANTS** Plaintiff's IFP motion, **DENIES** her motion for TRO and/or preliminary Injunction, and **DISMISSES** the case.

## I.      IFP MOTION

Generally, a party who institutes a civil action, suit, or proceeding in a district court of the United States, must pay a filing fee of $405.[2] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). If the plaintiff seeing to proceed IFP is a "prisoner," the Prison Litigation Reform Act ("PLRA")

---

(filed Feb. 2, 2025); *Camargo v. Doe, et al.*, E.D. Cal. Case No. 1:25-cv-00723-BAM (hereafter "*Camargo II*") (filed June 13, 2025); *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (the court may take judicial notice of any "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a 'direct relation to matters at issue.'") (quoting *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002)). In *Camargo Alejo I*, Plaintiff identifies as transgender and also challenges the adequacy of the medical treatment provided for her keratoconus, but while she was detained at Vista Detention Facility ("VDF") from September 2024 through January 2025. *Id.*, ECF No. 1 at 1; ECF No. 17 at 10; ECF No. 30 at 3–4. In *Camargo II*, Plaintiff claims prison officials at Wasco State Prison also failed to provide adequate care for her keratoconus in April and May 2025. *See id.*, ECF No. 1 at 3. Plaintiff was released from CDCR custody and transferred into ICE custody on September 4, 2025. *See Camargo Alejo I*, ECF No. 26 (Notice of Change of Address).

[2] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The additional $55 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

requires submission of a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). Prisoners granted IFP must also "pay the full amount of a filing fee," but may do so in installments as provided by 28 U.S.C. § 1915(b)(1). *See Bruce v. Samuels*, 577 U.S. 82, 86 (2016).

"Unlike other indigent litigants, prisoners proceeding IFP must pay the full amount of filing fees in civil actions and appeals pursuant to the [Prison Litigation Reform Act ("PLRA")]." *Agyeman v. Immigration & Naturalization Servs.*, 296 F.3d 871, 886 (9th Cir. 2002). As defined by the PLRA, a "prisoner" is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915(h). A person detained and subject to removal or deportation—like Plaintiff here—is not a "prisoner" under the PLRA. *See Agyeman*, 296 F.3d at 886; *Ojo v. Immigration & Naturalization Servs.*, 106 F.3d 680, 682–83 (5th Cir. 1997) (holding that a detainee of the Immigration and Naturalization Service ("INS") is not a prisoner for the purpose of the PLRA filing fee provision); *cf. Andrews v. King*, 398 F.3d 1113, 1122 (9th Cir. 2005) ("civil detainee" is not a "prisoner" within the meaning of the PLRA).

Thus, while Plaintiff's exhibits and her prior cases show she was previously incarcerated at VDF, Wasco, and Richard J. Donovan Correctional Facility, she is now civilly detained at OMDC which is managed and operated by Core Civic, a private for-profit detention facility that contracts with ICE to house immigration detainees.[3]

---

[3] *See e.g., Geo Grp., Inc. v. Newsom,* 50 F.4th 745, 753 (9th Cir. 2022) (noting that "[v]irtually all of ICE's detention capacity in California is in privately owned and operated facilities."); *see also* https://www.ice.gov/detain/detention-facilities/otay-mesa-detention-center (last visited Jan. 21, 2026); https://www.corecivic.com/facilities/otay-mesa-detention-center (describing ICE as OMDC's "customer base") (last visited Jan. 21, 2026); *Urmancheev v. Immigr. & Customs Enf't Health Servs. Corps*, No. 22-CV-0762-CAB

Accordingly, Plaintiff is not a "prisoner" under the PLRA, the filing fee requirements set out in 28 U.S.C. § 1915(b) do not apply, and the Court need only review her affidavit of assets, just as it would for any other non-prisoner litigant. *See Agyeman*, 296 F.3d at 886.

Plaintiff attests she has no assets or income except for $120 "from an organization for the holidays" and $25 in monthly support for food from "FFI."[4] ECF No. 2 at 1. She further reports to have incurred civil filing fees for the two lawsuits previously filed in this Court and in the Eastern District of California. *Id.* at 2; *see also Camargo* II, ECF No. 2 (E.D. Cal. June 17, 2025) (Order Granting IFP and obligating Plaintiff to pay statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915(b)(1), (2)). Accordingly, the Court finds Plaintiff has established the inability to pay the fees or post the securities required to maintain this civil action and **GRANTS** her motion to proceed IFP (ECF No. 2).

## II.    SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)

### A.    *Sua Sponte* Review Standard

A complaint filed by any person proceeding IFP is subject to *sua sponte* dismissal if it is "frivolous, malicious, fail[s] to state a claim upon which relief may be granted, or

---

(MSB), 2022 WL 17541026, at *1 (S.D. Cal. Dec. 8, 2022) (noting OMDC's operation "under a private contract with ICE."). "ICE primarily houses civil immigration detainees in one of four kinds of facilities: '(1) Service Processing Centers; (2) Contract Detention Facilities; (3) Intergovernmental Service Agreement facilities; and (4) [spaces provided by] riders on U.S. Marshals Service ... or Federal Bureau of Prisons (BOP) contracts.' [] 'Service Processing Centers are owned by ICE and staffed by a combination of federal employees (who mainly provide medical care) and contract employees (who provide detention services).' [] Contract Detention Facilities, as the name implies, are 'owned by private companies that contract directly with the government and are predominantly staffed by contract employees.'" *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315, 330 (3d Cir. 2025) (Ambro, J., dissenting).

[4] Plaintiff does not explain, but the Court presumes she is referring to Freedom for Immigrants, "an immigrant-led, abolitionist organization committed to ending immigration incarceration." *See* https://www.freedomforimmigrants.org/about-us (last visited Jan. 22, 2026).

seek[s] monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (holding that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners"); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) not only permits, but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim.").

"The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Federal Rules of Civil Procedure 8(a) and 12(b)(6) together require a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint fails to state a claim if it lacks a "cognizable legal theory" or "sufficient facts … to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And while the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

**B.    Plaintiff's Allegations**

The factual allegations in Plaintiff's complaint are disjointed and conclusory, and she incorporates by reference nearly 100 pages of exhibits comprised of CDCR medical records pre-dating her transfer to ICE custody and 20 separate Grievance Requests

submitted to OMDC officials between September 22, 2025 and December 29, 2025.[5] *See* ECF No. 1-2, 1-3. From best the Court can discern, Plaintiff alleges to have been diagnosed with keratoconus, a progressive eye disease affecting the cornea.[6] *See* ECF No. 1 at 3, 5, 7; *see also* ECF No. 1-3 at 21–22. As a result, she suffers from blurry vision, astigmatism, light sensitivity, inflammation, and eye pain. *See* ECF No. 1 at 6.

On September 22, 2025, Plaintiff submitted the first of several repeated "ICE Detainee Requests" seeking referral to an "outside" ophthalmologist for corneal cross-linking and an eventual corneal transplant. *See* ECF No. 1 at 6–7, ECF No. 1-3 at 23–30. On October 28, 2025, she was examined by an optometrist who prescribed eyedrops, prescription glasses, and contact lenses; but her continued requests for an ophthalmological consult were denied via OMDC's grievance process as unnecessary. ECF No. 1 at 6–7;

---

[5] Courts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference" to be part of the pleading when determining whether the plaintiff has stated a claim upon which relief may be granted. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). However, "a pro se litigant cannot simply dump a stack of exhibits on the court and expect the court to sift through them to determine if some nugget is buried somewhere in that mountain of papers, waiting to be unearthed and refined into a cognizable claim." *Samtani v. City of Laredo*, 274 F. Supp. 3d 695, 698 (S.D. Tex. 2017). "The Court will not comb through attached exhibits seeking to determine whether a claim possibly could have been stated where the pleading itself does not state a claim. In short, [Plaintiff] must state a claim, not merely attach exhibits." *Stewart v. Nevada*, No. 2:09-CV-01063-PMP-GWF, 2011 WL 588485, at *2 (D. Nev. Feb. 9, 2011).

[6] "Keratoconus (ker-uh-toe-KOH-nus) is an eye condition in which the clear, dome-shaped front of the eye, called the cornea, gets thinner, steeper and bulges outward into a cone shape. A cone-shaped cornea causes blurred vision and may cause sensitivity to light and glare." *See* https://www.mayoclinic.org/diseases/conditions/keratoconus/symptoms-causes/syc-20351352 (last visited Jan. 23, 2026); *see also Lolli v. Cnty. of Orange*, 351 F.3d 410, 419 (9th Cir. 2003) ("'Well-known medical facts are the types of matters of which judicial notice may be taken.'" (citation omitted)).

ECF No. 1-3 at 35, 39–40, 52, 65–66. Specifically, Plaintiff was advised on several occasions that "after being examined by an optometrist, there was no medical indication for referral to ophthalmology … because [she] did not require surgery or specialized procedures." ECF No. 1-3 at 52, 65–66.

Plaintiff now seeks $590,000 in general and punitive damages pursuant to 42 U.S.C. § 1983 based on claims that OMDC officials, whose individual acts or omissions she does not explain, have violated her Fifth and Eighth Amendment right to adequate medical care.[7] ECF No. 1 at 3, 6. She further seeks immediate injunctive relief requiring Defendants to refer her to an ophthalmologist for corneal cross-linking and a corneal transplant "when [her] eyes are ready for it." ECF No. 3 at 1–2.

### C.   Discussion

#### 1.   42 U.S.C. § 1983

As an initial matter, the Court finds it must dismiss Plaintiff's Complaint in its entirety to the extent she has commenced suit pursuant to 42 U.S.C. § 1983. *See* ECF No. 1 at 1. "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

Plaintiff is an immigration detainee currently held at OMDC, a for-profit detention facility privately-owned and operated by CoreCivic under federal contract with ICE. *See*

---

[7] Because Plaintiff is civilly detained and no longer serving a prison sentence, it is the Fifth Amendment Due Process Clause, and not the Eighth Amendment's prohibition of cruel and unusual punishment that governs the conditions of her confinement. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) (finding the language of the Due Process Clause protecting detainees and the Cruel and Unusual Punishment Clause protecting prisoners "differs, and the nature of the claims often differs."). "The Fifth Amendment requires the [federal] government to provide conditions of reasonable health and safety to people in its custody." *Roman v. Wolf*, 977 F.3d 935, 943 (9th Cir. 2020); *see also Giron Rodas v. Lyons*, No. 25CV1912-LL-AHG, 2025 WL 2300781, at *1 (S.D. Cal. Aug. 1, 2025).

ECF No. 1 at 2, 11. She seeks damages and injunctive relief based on claims that OMDC officials have failed to provide her with specialized medical care for keratoconus, but she fails to allege any Defendant acted under color of *state* law. Therefore, she necessarily fails to state a claim under § 1983. *Tsao*, 698 F.3d at 1138; *see also Lorenzo v. Figueroa,* No. 3:17-CV-01493-DMS-BGS, 2017 WL 4792384, at *2–3 (S.D. Cal. Oct. 24, 2017) (s*ua sponte* dismissing § 1983 suit brough by immigration detainee subject to removal and held at OMDC, a private facility now managed by Core Civic, and formerly known as Corrections Corporation of America without leave to amend pursuant to 28 U.S.C. § 1915(e)(2) as frivolous); *Politis v. Dyer*, S. D. Texas Civil Case No. 4:04-cv-02840-H (Aug. 12, 2004) (Order *sua sponte* dismissing civil action filed by immigration detainee for failing to state a claim cognizable under § 1983 without leave to amend pursuant to 28 U.S.C. § 1915), *aff'd*, 126 Fed. Appx. 648 at *1 (5th Cir. 2005); *Martinez v. Geo Grp., Inc.*, No. ED CV 18-1125-SP, 2020 WL 2496063, at *17 (C.D. Cal. Jan. 7, 2020) (concluding that "because GEO Group, Diaz, and Campos were not state actors, plaintiffs may not bring federal civil rights claims against them under § 1983.").

### 2. Bivens

Because Plaintiff is an ICE detainee and has named OMDC officials rather than state actors as Defendants, to the extent her complaint alleges a Fifth Amendment right to adequate medical care, the Court next considers whether her claims might nevertheless proceed pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), rather than under 42 U.S.C. § 1983. *See Watanabe v. Derr*, 115 F.4th 1034, 1043 (9th Cir. 2024) (noting courts are "obligated to 'liberally construe' documents filed pro se.") (citing *Ross v. Williams*, 950 F.3d 1160, 1173 n.19 (9th Cir. 2020) (en banc); *Erickson v. Pardus*, 551 U.S. 89, 94 (1976)).

Courts recognize only a narrow category of implied causes of action that may be brought against federal officials for alleged civil rights violations committed in their

individual capacities.[8] *See DeVillier v. Texas,* 144 S. Ct. 938, 943 (2024) *(citing Egbert v. Boule,* 596 U.S. 482, 490–491 (2022)). "In *Bivens* […], the Court broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." *Hernandez v. Mesa*, 589 U.S. 93, 99 (2020) (internal citations omitted). The Supreme Court has expanded this implied cause of action only twice, recognizing a *Bivens* remedy for a Fifth Amendment gender discrimination claim, *Davis v. Passman*, 442 U.S. 228, 230–31 (1979), and for an Eighth Amendment inadequate medical care claim raised by a federal prisoner's decedents. *Carlson v. Green*, 446 U.S. 14, 24–25 (1980).

Since then, the Supreme Court has "changed course," *Hernandez*, 589 U.S. at 99, and "consistently refused to extend *Bivens* to any new context or new category of defendants." *Ziglar v. Abbasi*, 582 U.S. 120, 132 (2017) (quoting *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). *Ziglar* "clarified [a] two-step framework that courts must use to decide whether to recognize an implied cause of action against federal agents for constitutional violations." *Schwartz v. Miller*, 153 F.4th 918, 926 (9th Cir. 2025) (citing *Ziglar*, 582 U.S. at 135–37). The first step requires courts to ask whether the case arises in a new context, *i.e.,* "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Id.* (citing *Ziglar*, 582 U.S. at 139.) "If the case does differ, then courts must consider whether 'there are special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* (quoting *Ziglar*, 582 U.S. at 136). "This second step focuses on 'whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages

---

[8] To the extent a *Bivens* action could be brought, the Court notes Plaintiff seeks to sue the OMDC Defendants in both their official and individual capacities. *See* ECF No. 1 at 2–3. "A *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) (cleaned up).

action to proceed.'" *Id.*

"'[E]ven one' step-two special factor is sufficient to foreclose courts from extending a *Bivens* remedy in a new context." *Id.* (quoting *Egbert*, 596 U.S. at 496). "Indeed, the second step will resolve against a new *Bivens* remedy 'in all but the most unusual circumstances,' because 'in most every case,' Congress is better positioned to provide a damages remedy." *Id.* (quoting *Egbert*, 596 U.S. at 486, 492). In short, "[r]ather than dispens[ing] with *Bivens* [altogether], the [Supreme] Court now emphasizes that recognizing a *Bivens* cause of action is 'a disfavored judicial activity.'" *Egbert*, 596 U.S. at 483 (quoting *Ziglar*, 582 U.S. at 121). But "[i]n the limited settings where *Bivens* does apply, the implied cause of action is the 'federal analog to suits brought against state officials under ... 42 U.S.C. § 1983." *Iqbal*, 556 U.S. at 675–76 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006)).

Here, even if Plaintiff's complaint is liberally construed as arising under *Bivens*, the Court concludes it requires dismissal. This is because Plaintiff's claims differ from *Carlson* and would extend *Bivens* to a new context, as she seeks to bring Fifth Amendment inadequate medical care claims against officials at OMDC, which is managed and operated by CoreCivic, a private for-profit corporation that contracts with ICE to house federal immigration detainees.[9] Plaintiff does not allege any Defendant is employed by the United States or any federal agency, and *Bivens* has never been applied to an individual who was not "in the direct employ of the federal government." *Martinez v. Geo Grp., Inc.*, No. ED CV 18-1125-SP, 2020 WL 2496063, at *18 (C.D. Cal. Jan. 7, 2020); *see also Sanchez-Rivera v. Bribiesca,* No. 20CV1264-MMA-MSB, 2020 WL 4500626, at *5 (S.D. Cal. Aug.

---

[9] Formerly known as Corrections Corporation of America ("CCA"), CoreCivic was "rebranded" as its "corporate enterprise" in October 2016. *See* https://www.corecivic.com/news/corrections-corporation-of-america-rebrands-as-corecivic (last visited Jan. 26, 2026). CoreCivic operates as "the nation's largest owner of partnership correctional, detention and residential reentry facilities, and one of the largest prison operators in the United States." *See* https://www.corecivic.com/about (last visited Jan. 26, 2026).

5, 2020) (*Bivens* does not authorize a damages suit against a private entity or its employees); *Dubon v. GEO Corr. & Det.*, No. 3:18CV686-CAB-RBB, 2018 WL 4002620, at *3 (S.D. Cal. Aug. 22, 2018) (explaining that the Supreme Court has refused to extend liability for constitutional violations to private actors who contract with the federal government (citing *Malesko*, 534 U.S. at 69)).

In *Minneci v. Pollard*, 565 U.S. 118, 120 (2012), the Supreme Court declined to recognize a *Bivens* claim involving the denial of medical care against employees of a privately operated federal prison, concluding that if :

> a federal prisoner seeks damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law ...., the prisoner must seek a remedy under state tort law.

*Id.* at 131. The Supreme Court in *Pollard* specifically refused to apply *Carlson* because that case was filed by a federal prisoner seeking damages from government personnel, not personnel employed by a private firm, and prisoners ordinarily can bring state law tort actions against employees of a private firm. *Id.* at 126.

Thus, because Plaintiff, like *Pollard*, seeks to sue employees of a private entity located in California for purportedly failing to provide her adequate medical care, and California tort law "provides for ordinary negligence actions, for actions based on 'want of ordinary care or skill,' for actions for 'negligent failure to diagnose or treat,' and for actions based on the failure of one with a custodial duty to care for another [and] to protect that other from 'unreasonable risk of physical harm,'" *id*. at 128, no *Bivens* remedy may be implied. *Id.* at 131; *see also McGurk v. Jusino*, No. 5:22-CV-00529-SB-JDE, 2022 WL 17080128, at *9 (C.D. Cal. Aug. 22, 2022) (finding extension of *Bivens* to a private employee of a medical diagnostics company foreclosed by *Pollard*); *Nagel v. Core Civic*, No. 2:20-CV-01279-JAD-VCF, 2021 WL 4954304, at *3 (D. Nev. Oct. 25, 2021) (dismissing federal prisoner could not pursue Eighth Amendment claims for deliberate indifference to serious medical needs against CoreCivic employees under *Bivens*

because they "d[id] not fall into one of the three categories for which *Bivens* claims are authorized, … and because they target[ed] employees of a privately operated prison.").

Thus, because Plaintiff's complaint fails to state a claim upon which relief can be granted, no additional facts could possibly cure these pleading deficiencies, and her suit lacks an "arguable basis" in law, *see Neitzke v. Williams*, 490 U.S. 319, 325 (1989), the Court **DISMISSES** her complaint *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii) and **DENIES** leave to amend as futile.[10] *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (upholding dismissal for failure to state a claim where "the complaint d[id] not make out a cognizable legal theory [n]or . . . allege sufficient facts to support a cognizable legal theory.").

### III.  MOTION FOR TRO / PRELIMINARY INJUNCTION

Plaintiff has also filed a motion for TRO and preliminary injunctive relief requiring the OMDC Defendants to refer her to an ophthalmologist for "corneal cross-linking" and a cornea transplant when her eyes are "ready for it." ECF No. 3 at 2.

Procedurally, a federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party served must appear to defend."). A court may not attempt to determine the rights of persons not before it. *See, e.g., Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 234-35 (1916); *Zepeda v. INS*, 753 F.2d 719, 727–28 (9th Cir. 1983). Pursuant to Federal Rule of Civil Procedure 65(d)(2), an injunction binds only "the parties to the

---

[10] The Court expressly intends the dismissal of this action to operate without prejudice to Plaintiff's pursuit of her pending § 1983 claims in *Camargo Alejo I*, S.D. Cal. Case No. 3:25-cv-0258-AGS-BJW and *Camargo II*, E.D. Cal. Case No. 1:25-cv-00723-BAM, as both those cases remain pending and involve Eighth Amendment inadequate medical care claims arising while Plaintiff was in state and local custody.

action," their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation." Fed. R. Civ. P. 65(d)(2)(A)-(C).

Substantively, Federal Rule of Civil Procedure 65 authorizes a trial judge to grant a temporary restraining order under certain circumstances "to preserve the status quo and the rights of the parties until a final judgment issues in the cause." *See Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020) (quoting *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010)). "The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). "A party seeking a preliminary injunction must meet one of two variants of the same standard." *Ramos*, 975 F.3d at 887 (quoting *All. for Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017)).

> Under the original standard, plaintiffs seeking a preliminary injunction must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest.

*Id.* (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "The Ninth Circuit employs an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard." *Id.* (citing *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011)).

> Under this alternate standard, [the court] weigh[s] the preliminary injunction factors on a sliding scale, such that where there are only serious questions going to the merits—that is, less than a likelihood of success on the merits a preliminary injunction may still issue so long as the balance of hardships tips sharply in the plaintiff's favor and the other two factors are satisfied.

*Id.* at 887–88 (internal quotation marks omitted) (quoting *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018)). In other words, "[a] preliminary injunction may be granted . . . where the moving party demonstrates either '(1) a combination of probable success on the merits *and* the possibility of irreparable injury *or* (2) the existence of serious questions going to the merits *and* that the balance of hardships tips sharply in [its] favor.'" *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007) (emphasis and second alteration

in original) (quoting *Sardi's Rest. Corp. v. Sardie*, 755 F.2d 719, 723 (9th Cir. 1985)).

First, Plaintiff's complaint has not survived the initial *sua sponte* screening required by 28 U.S.C. § 1915(e)(2), the United States Marshal has not been directed to effect service on her behalf, and the named Defendants have no actual notice of either her complaint or her TRO. Therefore, the Court cannot grant Plaintiff injunctive relief because it has no personal jurisdiction over any Defendant at this time. *See* Fed. R. Civ. P. 65(a)(1), (d)(2); *Murphy Bros., Inc.*, 526 U.S. at 350; *Zepeda*, 753 F.2d at 727–28. A district court has no authority to grant relief in the form of a temporary restraining order or permanent injunction where it has no jurisdiction over the parties. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) ("Personal jurisdiction, too, is an essential element of the jurisdiction of a district ... court, without which the court is powerless to proceed to an adjudication.") (citation and internal quotation omitted).

Moreover, the "[l]ikelihood of success on the merits 'is the most important' *Winter* factor[.]" *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015)). In conducting its initial screening of her complaint, the Court has found Plaintiff fails to state any claim upon which § 1983 relief can be granted and has dismissed her claims without leave to amend pursuant to 28 U.S.C. § 1915(e)(2). Consequently, she has necessarily failed to show, for purposes of justifying preliminary injunctive relief, any likelihood of success on the merits. *See Pimental v. Dreyfus*, 670 F.3d 1096, 1111 (9th Cir. 2012) ("[A]t an irreducible minimum the moving party must demonstrate a fair chance of success on the merits….") (internal quotation marks and citation omitted); *see also Williams v. Duffy, et al.,* Civil Case No. 18-cv-06921-BLF, 2019 WL 95924, at *3 (N.D. Cal. Jan. 3, 2019) ("[Having reached th[e] conclusion [that Plaintiff's complaint failed to state a claim], the Court need not reach the remainder of the *Winter* factors."); *Asberry v. Beard*, Civil Case No. 3:13-cv-2573-WQH JLB, 2014 WL 3943459, at *9 (S.D. Cal. Aug. 12, 2014) (denying prisoner's motion for preliminary injunction because his complaint was subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A, and therefore had not shown he was "likely to succeed

on the merits" of any claim, that "the balance of equities tip[ped] in his favor," or the issuance of an injunction would serve the public interest (citing *Winter*, 555 U.S. at 20)).

Finally, in order to meet Fed. R. Civ. P. 65's "irreparable injury" requirement, Plaintiff must do more than simply allege imminent harm; she must demonstrate it. *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). This demands she allege "specific facts in an affidavit or a verified complaint [which] clearly show" a credible threat of "immediate and irreparable injury, loss or damage." Fed. R. Civ. P. 65(b)(A). But nothing in Plaintiff's unsworn complaint or TRO motion establishes that she faces an immediate or credible threat of irreparable injury. Instead, the exhibits she relies on show only that she suffers from "mild keratoconus," *see* ECF No. 1-2 at 14, an eye disease for which she has been treated by an optometrist and prescribed both medication and scleral contact lenses. *See* ECF No. 1-3, at 1–6, 72. Her complaint and attached exhibits further show that while Plaintiff fears blindness if her condition progresses, *see* ECF No. 1 at 7, ECF No. 3 at 2, an October 28, 2025 optometric assessment of her current prognosis does not include any medical recommendation for immediate ophthalmological referral, advanced care, surgery, or any other "specialized procedures." *See* ECF No. 1-3 at 66.[11] "Speculative injury does not constitute irreparable injury

---

[11] Indeed, even if Plaintiff *could* bring a federal case against the OMDC Defendants based on their alleged failure to provide adequate medical care for her keratoconus while she has been held in immigration custody, *see e.g., Doe v. Kelly*, 878 F.3d 710, 722 (9tth Cir. 2017) (noting "[t]here is no question that [immigration] detainees are entitled to adequate medical care"), her allegations do not rise to the level of any constitutional violation. For it is well-settled that a mere difference of opinion between a prisoner-patient and medical authorities regarding the course of proper treatment does not amount to "deliberate indifference" under either the Eighth Amendment's cruel and unusual punishments clause or the Fifth Amendment's due process clause. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019) (a difference of opinion between the physician and the prisoner concerning the appropriate course of treatment does not amount to deliberate indifference to serious medical needs); *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate

sufficient to warrant granting a preliminary injunction." *Caribbean Marine*, 844 F.3d at 674–75; *Conn. v. Mass.*, 282 U.S. 660, 674 (1931) (an injunction is only appropriate "to prevent existing or presently threatened injuries"); *Sellers v. Gootkin*, No. CV 24-20-H-DWM, 2025 WL 3209324, at *2 (D. Mont. Oct. 2, 2025) (denying injunctive relief to prisoner requesting eye surgery where records showed he had been provided "recent and ongoing medical care" and there was no evidence he would suffer irreparable harm without further eye surgery); *Chappell v. Stankorb*, No. 1:11-CV-01425-LJO, 2012 WL 1413889, at *2 (E.D. Cal. Apr. 23, 2012) (denying injunctive relief where prisoner's claims of injury based on current or future housing decisions were nothing "more than speculative."), *report and recommendation adopted*, 2012 WL 2839816 (E.D. Cal. July 9, 2012). A presently existing actual threat must be shown, even though injury need not be certain to occur. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130–31 (1969); *FDIC v. Garner*, 125 F.3d 1272, 1279–80 (9th Cir. 1997); *Caribbean Marine*, 844 F.2d at 674.

Therefore, because Plaintiff has failed to serve the required notice upon the adverse parties, has shown no likelihood of success on the merits, and has offered only unsworn allegations of potential future harm, the Court **DENIES** her motion for TRO and/or preliminary injunctive relief (ECF No. 3). *See Dymo Indus. v. Tapeprinter, Inc.,* 326 F.2d 141, 143 (9th Cir. 1964) ("The grant of a preliminary injunction is the exercise of a very far reaching power never to be indulged in except in a case clearly warranting it."); *Goggin v. Williams*, No. 3:25-CV-01873-RBM-DEB, 2025 WL 3034073, at *4 (S.D. Cal. Oct. 30, 2025) (denying pro se plaintiff's TRO as moot where his complaint failed to state a claim

---

indifference); *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 637 (9th Cir. 2021) (applying objective "deliberate indifference" standards to ICE detainee's Fifth Amendment inadequate medical needs claims); *Roman*, 977 F.3d at 943 (recognizing that a "mere lack of due care" is not enough; and concluding that an immigration detainee must instead show "something akin to reckless disregard") (citing *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018); *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)).

and required *sua sponte* dismissal pursuant to 28 U.S.C. § 1915(e)(2)).

## IV. CONCLUSION

Accordingly, for all the reasons explained the Court:

(1) **GRANTS** Plaintiff's motion to proceed IFP (ECF No. 2) pursuant to *See* S.D. Cal. CivLR 3.2(a);

(2) **DISMISSES** Plaintiff's complaint *sua sponte* in its entirety and without leave to amend for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii);

(3) **DENIES** Plaintiff's motion for TRO and preliminary injunction (ECF No. 3);

(4) **CERTIFIES** that an IFP appeal would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3), and

(5) **DIRECTS** the Clerk of the Court to enter a judgment of dismissal and to close the file.

**IT IS SO ORDERED.**

Dated: January 28, 2026

Honorable James E. Simmons Jr.
United States District Judge